Yes sir. Good afternoon. Patrick Evans for the appellants. I'd like to reserve three minutes for rebuttal. May it please the court. This case is here on Rooker-Feldman, the federal doctrine that there cannot be essentially a horizontal appeal from a final state court judgment to the district court. However, while Rooker-Feldman has bewildered the courts and counsel for many years, it has been a controversial case. We've achieved clarification with the ExxonMobil case in 2005. And when we study Rooker-Feldman as to this case, what we really see is that under Rooker-Feldman and the Ninth Circuit case, which it cites with approval, null v. hall, that Rooker-Feldman does not apply to this case. So in the federal case that you filed, you're not asking for damages, right? Not against the judges, your honor. Not asking for an injunction? Not asking, yes, correct. You're asking for a declaratory judgment? We're asking for declaratory relief. And one aspect of the declaratory judgment that you're asking for is a declaration that the plaintiff's property and rights are held by them free and clear because the sale occurred when all this judicial misconduct happened, right? Yes, your honor. So if you get that, let's say you get that. Right. What are you going to do with it? Well, your honor, I think procedurally the way this would work is under CCP, California Code of Civil Procedure 473, we would take the judgment from the district court and under that code provision 473, as a matter of state law procedure, you can make collateral attack on the judgment. So you're going to take it back and use that to undo the state court judgment, right? That would be the attempt. That would be the attempt. Now, there's also state court law that's cited in the Noel v. Hall case to the effect that California has always allowed a collateral attack on a judgment on an independent claim that there was extrinsic fraud with regard to the obtaining of the judgment. But this isn't extrinsic fraud, right? Extrinsic fraud means somebody fooled the court. And your argument is the opposite. Well, your honor, the definition of extrinsic fraud is set forth in the McEwen case, which is cited by the Kogossian case. And let me just find that real quick. It says, extrinsic fraud is conduct which prevents a party from presenting his claim in court. Another citation. This is Wood v. McEwen, Ninth Circuit, 1981. Essentially, extrinsic fraud means an inability to properly present your claim and have it heard correctly by an impartial tribunal. You just took the word extrinsic out of it. Extrinsic means something external. In other words, somebody submits a false affidavit or bribes a witness or does something like that. This wasn't extrinsic. You're basically saying the judges were biased. No, your honor. We're saying more than that. The complaint alleges that essentially one of the judges, the trial court judge, was bribed, was, was, was, there was some type of quid pro quo that occurred and that the other judges essentially went along with it. So we have an extrinsic factor that's pled in the complaint, which is that this, that the trial judge had contact, had some arrangement with one of the adverse parties that led to the result. Well, first of all, that's not a bribery. Right. Extrinsic, I mean, ex-parte communication and bribery are not the same thing. And you have no evidence of bribery. And you don't have, you have basically no evidence of ex-parte communication, but you certainly don't have any evidence of bribery. At this point, we don't have any evidence, actual evidence of bribery. Or even an allegation. You don't even allege bribery. I think we do, your honor, a couple of times. We say that we, that it's our position on information and belief that beyond the underlying motivations for the bias that we posit, that the trial judge, in particular, did receive some type of remuneration or compensation in order to carry out the. What is it you allege he got? Well, we believe it was some type of, and the complaint says, some type of pecuniary benefit, something that was of value to him. And that's why he. Well, I mean, is it just like we'll take you on at jams or whatever, the ADR or whatever the organization is, or is there something more specific than that? Well, it's, the complaint is more specific in the sense that it alleges that it's our position that he, that this judge did receive something beyond just a promise or, or, or a hope and an enhanced chance, if you will, to go to jail. Somebody else. I'm sorry, your honor. Was that from jams or somebody else? From somebody else, your honor. And do you, do you identify that person some way? We do, your honor. It's the two LLs. What paragraph are you talking about in the complaint? Do you know? It's quite a lengthy complaint, right? Right. There's a number of paragraphs where, where this is stated. Bear with me for a moment. Okay. All right. I just, before coming here, and I, I'm sorry. Paragraph A, you know, was completely vaguely, you say, on information and belief, plaintiff's alleged that Judge Moss engaged in the willful, judicial misconduct in Harbin for his personal pecuniary or other benefit or compensation. He had more motive for his perfectly and strategically timed willful, but. Is that what you're talking about? Yes, that's one instance. That's not bribery. That's like he did it because he thought he might get something in the future. That's different from a bribe. Come on. That's not a serious argument, is it? Well, I believe it's a serious argument, Your Honor. I mean, the, the, the, the question is at what point do we have evidence to allege bribery? We have this, this situation where the judge has been disqualified. The facts are laid out. He knows he's disqualified. He's on vacation. He takes the case back. Well, he was allegedly disqualified. He apparently determined that he was improperly disqualified, or somebody else determined it. Well, he. You have no. Everybody who looked at it afterwards seemed to think that he had some basis for, for being reappointed to the case, reassigned. Well, there was never any determination on the merits of any type how it is that, that he became requalified. And we briefed in the, in the, in the complaint, we cite some of the law that regard, regarding a disqualification. There's never been any authority provided. And just as a matter of, of what we think is serious circumstantial evidence, it makes no sense that he's on vacation and he. That would be the subject of a state court appeal, right? I mean, I should say I am not a big fan of Rooker Feldman. But here, at least part of the case, is directly a challenge to the judgment in the state court. As, the fact that it's a declaratory judgment rather than a, a request that we ourselves avoid it is, is the only difference. But your, and, and the, and the evidence of the, of what, of the, most of the evidence of why you believe that there is a conspiracy against you is that they, the fact that they, they made such a big legal mistake, in your view. So that really is a review. It's impossible to decide this case without reviewing the legal judgments in the state court, right? I don't believe that's correct, Your Honor. Because the, the, the fundamental legal error was that there were illegal contracts and transactions. Well, that's what you said. The state court said there weren't. So you're therefore questioning the basic premise of the state court judgments. Well, but Your Honor, the, the, the way the case played out in terms of ignoring those claims, in terms of, of ignoring evidence, and the fact that, that there was, under the Oberholzer case and other California Supreme Court authority, that there was a continuing ignoring of this most settled principle of California law, in our view, combined with the judge coming back to. By the way, do you still have an appeal pending? We do, Your Honor. All right. So you should win. We would hope so, yes, Your Honor. Right. That's where you should win, in state court. We shouldn't be determining whether you were right or wrong about the, about whether it was illegal. Well, Your Honor, again, that's the legal error, and I think I'm out of time, but that's the legal error that we, that we have challenged, and we have an appeal for that. But we've come to Federal court to pursue what we believe is an independent claim. But it's not independent. I mean, I, I, I, I want to be very careful about this, because I do think that Rooker-Fellman should be carefully cabbed. But, so only, as our Noel case says, if you first determine that this is a de facto appeal, is what I'm about to say relevant. But you're, you're, 90% of your evidence as to why you think there was conspiracy is because you think that there was this very fundamental legal error, which they wouldn't have made if they were in cahoots. Well, that's correct, Your Honor. But wherever, wherever your, there would be a challenge in independent claim or a challenge collateral attack on justices or judges being biased, you would think at the root of that there would be incorrect judgment, incorrect rulings that, that precipitate the independent claim. And that's what's happened here. I, I, I would say. But if you had actual proof of bribery, that would be one thing, if you're prepared. But if your proof of bribery is there must have been bribery because otherwise they couldn't have made such a big legal mistake, then your whole case really turns into a legal mistake. Well, but, Your Honor, there's two separate tracks here to, to the, the wrongdoing, if you will, on the part of the judges. First, there is, as you say, the, the ignoring the most settled principle that you can't enforce illegal contracts. But then we get to the situation with the trial judge where this, this property, this extremely valuable property, as to which there's a TRO pending to stop the sale in front of another judge where this judge has been disqualified. The trial judge is on vacation. He's not near the courtroom. Suddenly he calls in and takes back the case on which he's been disqualified, takes back the case. Four hours later, the deed for this illicit fraudulent sale records. The timing is, is uncanny. And, you know, my experience, most of the time judges, case settles, whatever they're happy, judges want to see their caseload lessened and make the case go away. This judge calling in from vacation takes back a case on which he's disqualified. Four hours later it closes. Your Honor, it's our position that those facts show extrinsic fraud on the court. It's inconceivable that this judge didn't have ex parte communication with the adversary in order to do what he did. Your time is up. I will give you a minute of rebuttal. Thank you. Thank you, Your Honor. Thank you. Good afternoon. May it please the court. Sarah Overton on behalf of appellees, Justice O'Leary, Justice Bedsworth, Justice Rylersdam, Judge Marginis, and Judge Moss. I've heard my colleague state that Roker Feldman does not apply because there's extrinsic fraud. However, as Your Honors have mentioned or the questions, I suppose, that you relate to whether extrinsic fraud is with regard to a state court judgment or is, as was alleged in this complaint, alleged fraud that the judges somehow engaged in in issuing their rulings. When you're talking about the judges' rulings as being the fraud, it's not extrinsic. In fact, one of the – Well, to be precise, they are relying on the judges' rulings as being evidence of the fraud. That's my understanding. The complaint – I understand it's a fine cut difference, but – It is a distinct difference, but the actual allegations in the complaint and looking at the record, Volume 3 at page 298, their complaint with regard to my clients states that several times plaintiffs appealed or petitioned Judge Moss' unlawful rulings and failures to follow the law to the appellate court, Division 3. The record demonstrates – I suppose this complaint had alleged with any specificity at all that John Jones paid $10,000 to Judge – Moss. And so I was denied due process and I have a 1983 claim. Would that be a Rooker-Feldman problem? It would not if what you're trying to attack is the actual judgment. It would not or it would? It would not be extrinsic fraud if – The question was whether it would be a Rooker-Feldman problem. It would be under Rooker-Feldman. Rooker-Feldman would apply. Well, but isn't that exactly what the Caperton line of cases is about or other cases in which you're claiming a – It seems to me that if your contention is that a state court judge was not so that the judgment is essentially not really a judicial judgment. I don't know that Rooker-Feldman applies to that. There was no bribe alleged in this case. I know, but I'm just trying to orient myself in terms of what's the line here. Now, I mean, we know that Noel's main premise is that essentially if you're trying to affect the validity of the judgment as opposed to directly, as opposed to complaining about the private parties who are the adversaries in the case, then that's the line. But it doesn't work all that clearly here because it appears to me that there are some cases and there may be some cases in which the judges are the and the judgment is being attacked, but still it's not a de facto appeal exactly. The difference that I see is that if you are suing a judge for fraud and you're not trying to attack the judgment, so if you have a separate lawsuit because of judicial actions and somehow judicial immunity did not apply, but you are simply saying that they have a separate agreement and so there are damages that I am seeking outside of the judgment. You can't get damages from a judge because there's judicial immunity, so that's not going to work. I beg your pardon? I said there would be judicial immunity. There is no such case. There is judicial immunity. Therefore, you can't get damages. You can't get damages. That's correct. But if you're attacking the judgment, even if you're saying that there's some sort of act outside of the case, Rooker-Feldman still applies. So what exactly is the state court judgment that you think the federal lawsuit attacks? Is it the judgment dismissing the lawsuit or finding in favor of the state court defendants? Or what exactly is the judgment that's being collaterally appealed or horizontally appealed or whatever the lingo is? Well, the language in the complaint is with regard to an appeal or a writ petition from Judge Moss's decision that he was not recused from the case and the justice's opinion that upheld that decision, that is what ---- Upheld the decision not to recuse? Correct. That's the thing that gives rise to the Rooker-Feldman? No, those are the other issues. You're not getting my question. My question is, so Rooker-Feldman says you can't appeal a state court judgment in federal court. What's the state court judgment that you're contending that the plaintiff is trying to, in effect, appeal in federal court? With regard to the sale of the Palm Beach Park Association. So here's my question for you. I mean, Rooker-Feldman gets overused, and usually it gets overused because people want to try to make it do the work of claim preclusion when claim preclusion is really the appropriate way to go. That was the case, for example, in Exxon Mobil. Why didn't you argue claim preclusion here? You had a judgment in state court. Why didn't you just argue claim preclusion? Because there are other issues that are interrelated. For example, there are the collateral issues. Claim preclusion is this is an argument, this is a contention you could have made, or could have made in state court, and there's a final judgment against you. All of these arguments here about Judge Moss went off the rails and was doing this to try to curry favor or whatever, those are all arguments that the plaintiff could make on appeal in state court, and before the trial court, for that matter, and on appeal. So those are all things that potentially could be covered by the doctrine of claim preclusion. So why wouldn't you argue claim preclusion? I mean, particularly when you've got Exxon Mobil out there that you're seeing with neon lights on, you're trying to use this doctrine to do the work of preclusion law. Why didn't you make that argument? I wonder if there's some reason. Like, does California not apply claim preclusion to judgments that are on appeal, or is there something like that? Yes, that's why. That's why. Okay. Thank you. Right? They don't. And with regard to my clients, we argue judicial immunity, because with regard to the allegations in the complaint, the judges are immune. There's nothing that takes ---- But that leads to another problem, which is, I mean, I think my answer is correct. My answer for you, i.e., California does not ---- the case is still on appeal. Is that right? One of them. One of them is still on appeal. And California doesn't apply claim preclusion until the end of the line. You have to have a judgment. You have to have a final judgment, meaning all the appeals have to be over. On the merits. Okay. That's right. Why should we be applying Merkel-Feldman under those circumstances? Because with regard to the issues that are alleged in this case, which are things that have been finally determined, such as the disqualification issue ---- That's why Judge Connelly was asking you what he was asking you. What is it exactly that is the judgment that you're claiming is being undermined? As I understand it, there's a series of cases. The main issue was with regard to the sale of the Palm Beach EBPA. That, as I understand it, was determined and was sold, and their interests were sold. There were other cases. And to be honest, because some of the facts of all of the cases aren't in the complaint, I'm not sure what the other cases are. But with regard to this case, the main judgment is the sale of the park. All right. You should give up your time, or your colleague is not going to get to say anything. Okay. Thank you so much. I'll give you a minute in your rebuttal. Thank you. May it please the Court, good afternoon. Jeffrey Miller of Lewis, Brisbois, Biscard & Smith on behalf of Appalese Palm Beach Park Association, Diana Montelli, George Fiore, and Dan Smith. I'm having trouble hearing you. Could you please talk into the mic? I will, Your Honor. Thank you very much. If I could address the question that the Court was concerned about on the issue of, I guess, finality, we could call it. What's interesting in the case law, particularly ExxonMobil does not make a determination that there has to be a final judgment. What it basically says is that the doctrine of Rooker-Feldman can apply if the State court proceedings have, and I quote this, ended. That can mean a lot of things. It doesn't necessarily mean a final judgment. We've cited cases in our brief. It does lead to this anomaly, at least in California, where you could theoretically do a Rooker-Feldman because you can't do claim preclusion because the case isn't final for California preclusion purposes, which seems an odd way to proceed, an odd way to put the two doctrines together. You'd think they should fit each other. That's interesting. Yeah. We do know, and I will be the first to admit that it's a concept that is in somewhat of a flux as far as what that means. But in this particular case, we've got a scenario where we do have an ending. And just let me give you one example. What counsel referred to in this case as to, we'll call it the ex parte contact argument where he said that he was going in for a TRO and the judge allegedly was on vacation and somehow called in. The argument that they made in that case was there was some kind of improper ex parte contacts by someone, or one of the parties involved in the case. And that got appealed. What? And that got appealed. It got written, and that's really important here because if you look at the California Code of Civil Procedure 170.3D, that's a statutory writ. So that means the only avenue for review is a writ proceeding. Whether it's granted or denied, that order going up had to be reviewed by a writ. So what that means is it's not appealable immediately. It's not appealable after a final judgment. That ruling, after it goes up to the Fourth Appellate District Division 3, is ended. And it's ended because there's no further review available. That's an example of what I think Rooker-Feldman is talking about. But there are at least two of the claims here for breacher fiduciary duty and adding and abetting a breacher fiduciary duty against private parties, which it would seem under the null doctrine can't be Rooker-Feldman precluded. How could they be? Well, I think so, Your Honor. It's not against the judges or the verdict, and it doesn't attack anything that was actually in the verdict because these things weren't litigated, as I understand it. They were litigated, Your Honor, in the Chodo's action. That is exactly what was being argued. I know the Tyler claim was, but these two were, too? Yes. And so we're talking about a situation, Your Honor, where the finality of the decision Why shouldn't that be treated as issue or claim preclusion or nothing? Which one, Your Honor? Fiduciary duty. The fiduciary duty claims. It was decided. It was decided in the lower court. That's the point. Okay. In other words, why wouldn't that be? So if just reasserting the same claim that was decided against them in State court, why isn't that an easy one to say claim preclusion? Well, Rooker-Feldman was argued here, Your Honor. Technically, the private parties here did not file a motion. It was the judgment was decided and the entire case was dismissed. But why would that be? That's what I'm asking. How can that be? Why is that proper? Well, I think Rooker-Feldman applies in this case for the very clear reason that this is not an Exxon type of situation. In Exxon, what you had was parallel litigation. In other words, two cases going This is parallel in the sense that the State court appeal is still ongoing. But the appeal, Your Honor, is of the decision that was made and ended in the reality of what happened here. But as to the – I understand what you said as to the recusal. That makes sense. But I'm asking about the substantive claims for breach of fiduciary duty against the private parties where the judges are not defendants. Why is that not a situation in which the case is just going on in State court? Well, I think, Your Honor, that when you're looking at that, I think the – ultimately, all those actions are intertwined. Well, that's just a complete fudge. I mean, that's the answer. That's the – it's only saying the conclusion. They're separate claims. They don't involve the judges or an allegation of fraud or anything else. And they're the same issues that are going on still on appeal in State court. Is that much right? So why are they – why are they inextricably intertwined, whatever that means? The allegations, Your Honor, are sufficiently similar that it would cover the entire claim, in my opinion, anyway. How are they similar? I mean, the other ones, how are they similar? The first set of claims have to do with the allegation that there was some kind of fraud going on or collusion, and these just have to do essentially with the fact that there's just a State – two State causes of action against your client saying you did this. He's arguing that the fraud and collusion is a result of the decisions made by the court, which are the same decisions that were made in the State court.  Your time is up. Thank you very much. Thank you, Your Honor. Thank you for your argument. The court asked are there cases out there similar to this, and in fact there is. Cited in our papers, Great Western Mining and Mineral v. Fox Rothschild, Third Circuit, 2010, 615 F. 3rd 153. It's uncanny how close that case is, and it's in our papers. It was – it involved a situation where the plaintiff alleged there was some tainting of due process because of the influence, the external influence of the largest ADR service provider in that tri-State area, and it is, as I said, uncanny how close it is to our case. I would urge the court – But was that case about a specific underlying case or just about the whole situation? Well, Your Honor, in that case, there was State court litigation that was concluded. The plaintiff brought a 1983 action. The court found that Rooker-Feldman did not apply because it was an independent claim. Ultimately, the case was dismissed on appeal because after three tries on the third attempt to amend, the plaintiff was unable to state a claim, according to the opinion. Now, our point is that we haven't had a chance to amend, and if we're given a chance to amend, we've discovered other facts and laws since we filed this complaint which we would incorporate, that we would do things a little bit different. So we believe that it's appropriate that we have the right to amend, just as the plaintiff did in Great Western. They had the right to amend three times. That case, Great Western, also cites another case, Ness's, N-E-S-S-E-S v. Shepard, which is a Seventh Circuit opinion from 1993, which was about judges being sued. Similar facts. And, again, finding no Rooker-Feldman impediment. The point is, Your Honor, we believe that Great Western stands for the proposition that an ADR service provider that offers jobs to retiring judges and justices, and that it is an external influence. And that's essentially what Great Western, in my view, found. And on top of that, we have this situation where the judge called in from vacation. Kagan. Pressure time is way up. Thank you, Your Honor. Just one last thing. We don't see how this case can be dismissed with prejudice. This was a jurisdictional fight and ‑‑ All right. Thank you very much. Thank both of you for your arguments. Thank you. Aikerle v. O'Leary is submitted. We'll go on to Great Lakes Reinsurance v. In and Out Fashions.
judges: Tashima, Berzon, Kennelly